JULIUS S. RIPPEL v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Argued December 11, 1913—Decided January 23, 1914.

1. The provision of section 2 of an act for the mutualization of stock life insurance companies (*Pamph. L.* 1913, *p.* 152), conferring upon the Chancellor as a legislative agent authority to appoint appraisers to appraise the capital stock of such a corporation, is a valid exercise of legislative discretion.
2. The case of *In re Prudential Insurance Co. of America*, 88 *Atl. Rep.* 970, followed.

On *certiorari.*

Before Justices GARRISON, TRENCHARD and MINTURN.

For the prosecutor, *John R. Hardin* and *Robert H. Mc-Carter.*

For the defendant, *Edward D. Duffield* and *Richard V. Lindabury.*

For the policyholders, *John W. Griggs* and *Merritt Lane.*

The opinion of the court was delivered by

GARRISON, J. This writ of *certiorari* brings up for review an order made on July 9th, 1913, by the Chancellor of the State of New Jersey appointing three appraisers to appraise the capital stock of the Prudential Insurance Company of America pursuant to the provisions of "An act to permit any stock life insurance corporation of this state to acquire the capital stock thereof for the benefit of its policyholders and to convert such stock life insurance corporation into a mutual life insurance corporation." *Pamph. L.* 1913, *p.* 152.

The board of directors of the defendant, on April 14th, 1913, adopted the resolution required by the second section of this statute, pursuant to which resolution the petition authorized by such section was duly presented and the prayer thereof granted by the order now under review. The prosecutor is a stockholder of the defendant who objects to the making of this order upon several grounds, some of which attack the constitutionality of the statute under the provisions of which the order is made, while others attack what, for want of a better word, may be termed the "unworkability" of the statute excepting by an unconstitutional infringement of the property rights of the prosecutor.

These objections, which are set forth in twenty-six reasons, are substantially two, viz.:

*First.* That the statute in question does not invest the Chancellor of this state or the Court of Chancery with jurisdiction to make the order under review or the other orders provided in the statute.

*Second.* That the statute impairs the obligation of the contract between the defendant and its stockholders and deprives the latter of their property in the former without due process of law.

Upon the argument as to the validity of the order brought up by the prosecutor it was in a sense necessary that the statute as a whole should be discussed, and in the course of such discussion the entire scheme of the statute, including orders that have not yet been made, and that may never be made, was subjected to destructive criticism upon the one hand and justified and defended upon the other. Such argument was enlightening, but so far from persuading us to anticipate matters that have not yet arisen or inducing us to decide questions that may never arise, its effect has been to make it clear that no such premature decisions should be made or can be made without doing serious harm to one or the other of the conflicting interests.

The question of jurisdiction must of course be met and answered upon this present *certiorari*, but the constitutionality, or rather the feasibility, of the statutory scheme as a whole cannot in our judgment be intelligently adjudicated or even adequately presented for decision in the absence of certain concrete facts and definite data that are not before us and some of which have not yet come into existence. Ultimately, as it seems to us, the legislative scheme rests upon the proposition that all of the surplus of a stock life insurance company does not necessarily belong to its stockholders, *i. e.*, some of it may lawfully become the property of the policyholders as a class, and in a given case the amount of the surplus thus lawfully belonging to the policyholders may be, at least, equal to the aggregate value of all of the capital stock of such company unimpaired by the unlawful diversion of any part of the surplus to the policyholders. If all of the stock is to be acquired for the policyholders out of the surplus of the company without impairing the rights of its stockholders, the foregoing propositions would seem to be essential. I may not have stated the proposition as counsel would state it, but in some shape the questions thus raised, together with

other cognate questions, must be answered, and obviously that cannot be safely or satisfactorily done until the necessary data are before the court in the concrete form of an appraisement of the value of the stock of the company in which appraisement the relation of the stock to the surplus has been both theoretically determined and actually reckoned.

Furthermore, if action by the board of directors is to be a controlling factor, as it was in the Blanchard case, such official action must have taken place and its legal effect be known, and it may well be that the validity of such action may have to be tested in some other proceeding.

With these and other important factors unknown, and at present unknowable, we consider that it would be highly indiscreet for us to attempt to deal with questions of such importance that are really not before us upon this *certiorari* which brings up for review a single order only which may be sustained without prejudice to the ultimate consideration of these other questions as they arise in the future. For this reason we shall not deal with the constitutional questions that counsel have advanced and argued.

The jurisdictional question that is before us upon this writ is in our opinion controlled, as far as this court is concerned, by the decision rendered by the Court of Errors and Appeals dismissing the appeal taken by the present prosecutor directly to that court. *In re Prudential Insurance Co.,* 88 *Atl. Rep.* 970.

Any contention that the authority to make the order now before us was the unconstitutional vesting of jurisdiction in the Court of Chancery is effectively disposed of by the decision just cited; and in this connection it may be well to point out that the appraisement that is to be made under the order now before us is essential to the enlightenment of both the stockholders and policyholders as voters upon the propositions to be submitted to them as such under the seventh section of the act, and hence to that end, and independently of its use in fixing the price to be received by the one and paid by the other, was a matter of legislative discretion, to be performed by a legislative agent without regard to the legal ques-

tions that have been raised touching its use for such latter purpose.

The authority of the Chancellor as such legislative agent to make the order now before us has not in our judgment been successfully assailed; the order is therefore affirmed, with costs.